1
2
3
4
5
6
7
8                        UNITED STATES DISTRICT COURT

9                        EASTERN DISTRICT OF CALIFORNIA

10

11   MARINO ANTONIO HERNANDEZ,            Case No. 1:19-cv-01219-JLT-CDB (PC)

12              Plaintiff,                **FINDINGS AND RECOMMENDATIONS
                                          TO GRANT DEFENDANTS' MOTION
13       v.                               FOR SUMMARY JUDGMENT**

14   J. MARCELO, et al.,                  (Doc. 65)

15              Defendants.               **14-DAY OBJECTION PERIOD**

16

17       Plaintiff Marino Antonio Hernandez is proceeding *pro se* and *in forma pauperis* in this

18   civil rights action brought pursuant to 42 U.S.C. § 1983.

19       I.      **RELEVANT PROCEDURAL BACKGROUND**

20       Plaintiff initiated this action with the filing of his complaint on September 5, 2019. (Doc.

21   1.)

22       Following screening, on March 2, 2020, Plaintiff was directed to file a first amended

23   complaint, or to notify the Court that he wished to proceed only on his claims against Marcelo

24   and Akabike[1] and to dismiss Cryer, Mbadugha, and Oberst. (Doc. 11.) Plaintiff notified the Court

25   he wished to proceed on the cognizable claims. (Doc. 12.)

26   //

27

28   _____
     [1] Specifically, the Court found Plaintiff had stated cognizable Eighth Amendment deliberate indifference
     to serious medical needs claims against Defendants Marcelo and Akabike, as well as an Americans with
     Disabilities Act (ADA) and Rehabilitation Act (RA) claim against Marcelo. (Doc. 11 at 5-9.)

On March 17, 2020, the Court issued Findings and Recommendations, recommending Defendants Cryer, Mbadugha and Oberst be dismissed, and that the action proceed only on Plaintiff's deliberate indifference to serious medical needs claim (Claim I) and ADA and RA claims (Claim III). (Doc. 14.) The findings were adopted in full on April 21, 2020. (Doc. 17.)

Following service of the complaint, Defendants filed a motion to dismiss on June 29, 2020. (Doc. 20.) Plaintiff opposed (Doc. 27) and Defendants replied (Doc. 32).

On August 17, 2020, Plaintiff filed a motion to strike Defendants' affirmative defenses. (Doc. 28.) Defendants filed an opposition on September 11, 2020. (Doc. 32.)

On October 15, 2020, the Court issued Findings and Recommendations to grant Defendants' motion to dismiss; specially, to dismiss Plaintiff's official-capacity claims of deliberate indifference and ADA and RA claims with leave to amend, and to dismiss his individual-capacity ADA and RA claims without leave to amend. (Doc. 35.) Plaintiff filed objections. (Doc. 41.)

On January 6, 2021, the Court issued Findings and Recommendations to deny Plaintiff's motion to strike affirmative defenses. (Doc. 40.) Plaintiff filed objections. (Doc. 44.)

On March 17, 2021, the Court issued its Order Adopting Findings and Recommendations and Denying Plaintiff's Motion to Strike Defendants' Affirmative Defenses. (Doc. 45.)

On March 26, 2021, the Court issued its Order Adopting Findings and Recommendations and Granting Defendants' Motion to Partially Dismiss Complaint. (Doc. 46.)

On March 29, 2021, the Court entered an order directing Plaintiff to file a first amended complaint curing the deficiencies identified in the Court's October 14, 2020 findings, or to file a notice indicating he did not wish to file an amended complaint and instead wished to proceed only on his individual-capacity claims for deliberate indifference to serious medical needs and to dismiss his remaining claims. (Doc. 47.) On April 14, 2021, Plaintiff notified the Court he wished to proceed on his cognizable individual-capacity claims. (Doc. 48.)

On April 27, 2021, the Court issued Findings and Recommendations to dismiss Plaintiff's official-capacity deliberate indifference, ADA, and RA claims with prejudice. (Doc. 49.) On May 28, 2021, the findings were adopted in full. (Doc. 50.)

On July 8, 2021, a Discovery and Scheduling Order issued. (Doc. 55.) Following modification of the scheduling order, Defendants ultimately filed the instant motion for summary judgment on July 20, 2022. (Doc. 65.) Concurrently therewith, Defendants filed a Request for Judicial Notice. (Doc. 66.) A subsequent discovery motion filed by Plaintiff was denied as untimely (Doc. 73) and Plaintiff ultimately filed an opposition to the summary judgment motion on September 21, 2022 (Doc. 74). Defendants timely filed their reply on October 19, 2022. (Doc. 79.)

## II.   PLAINTIFF'S ALLEGATIONS

The relevant allegations[2] are quoted from the Court's March 2, 2020 screening order:

> Plaintiff alleges that he has a "permanent disability due to severe ankle joint arthritis, degenerative hips condition and osteoarthritis in his lumbar spine." (Doc. 1 at 5.) Plaintiff's claims stem from his medical treatment and accommodations at the Substance Abuse Treatment Facility and State Prison, Corcoran (SATF). (*See id.* at 1, 5.)
>
> Plaintiff alleges Dr. Marcelo "deprived" him of a wheelchair, back brace, and "[m]obility [i]mpaired vest" on July 12, 2018, despite Plaintiff's protests that he was unable to walk due to pain in his ankle, back, and hips. (*See id.* at 5.) Plaintiff states that Marcelo also deprived him of "safer transportation, bottom bunk/bottom tier accommodations excluding him from his daily activities, services, and programs." (*Id.* at 9.) Dr. Marcelo noted that Plaintiff had no disability and "no evidence of mobility impairment." (*Id.* at 5.) Plaintiff alleges that Marcelo "ignored with clear indifference" Plaintiff's medical chrono from July 2017, which states that he has a disability and a "severe orthopedic condition of hips, knees, ankles, and feet." (*Id.*)
>
> Plaintiff has been forced to walk in severe pain and with a limp, and he "sometimes jumps on one leg" due to the pain in his left ankle. (*Id.* at 6.) Plaintiff states that, because of this, other inmates call him "flamingo." (*See id.*) Plaintiff is unable to participate in daily activities and misses meals on occasion because he is bedridden or unable to walk. (*See id.*)
>
> On April 18, 2018, Plaintiff's teacher, C. Flores, referred Plaintiff to Dr. Akabike, Plaintiff's primary care physician, because she feared he might "cause an accident" due to his "manner of walk." (*Id.* at 6.) During his visit, Plaintiff requested a wheelchair "because he was suffering severe pain every time he … walk[ed]." (*Id.*) According to Plaintiff, Dr. Akabike responded, "If I give you the wheelchair, I will … lose my license." (*Id.* at 6-7.) Plaintiff alleges that Dr. Akabike wrote falsely in her notes that Plaintiff said "he did not need

---

[2] The allegations concerning Defendants Cryer, Mbadugha and Oberst have been excluded as those Defendants were dismissed from this action.

3

1
2

the wheelchair because he can walk" and "that he walks several laps at a time." (*Id.* at 7.) Plaintiff affirms that he never said this to Akabike. (*Id.*)

3
4
5

On August 27, 2019, Plaintiff again visited Dr. Akabike. He repeated his request for a wheelchair and told her about the pain in his hips, back, and ankle. According to Plaintiff, Dr. Akabike told him "that his pain is no medical indication for a wheelchair." (*Id.*) When Plaintiff attempted to say more, Akabike replied, "I'm done." (*Id.*)

6

(Doc. 11 at 3-4.)[3]

7

### III.   LEGAL STANDARDS

8

#### A.  Summary Judgment

9
10
11
12
13
14
15
16
17
18
19
20
21

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials," or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).

22
23
24
25
26

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings but is required to tender evidence of specific facts in the form of affidavits,

27
28

---

[3] The Court acknowledges Defendant Nkiruka Ndu, M.D. was erroneously sued as Nkiruka Akabike. (*See* Doc. 20.) The Court will refer to Dr. Ndu as Dr. Akabike only where Plaintiff is quoted as having done so; any scrivener's error herein is unintentional.

and/or discovery material, in support of its contention that the dispute exists or shows that the materials cited by the movant do not establish the absence of a genuine dispute. *See* Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The opposing party must also demonstrate that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987). In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita,* 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

Summary judgment should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of

1     proof concerning an essential element of the nonmoving party's case necessarily renders all other

2     facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted,

3     "so long as whatever is before the district court demonstrates that the standard for the entry of

4     summary judgment … is satisfied." *Id.* at 323.

5        In judging the evidence at the summary judgment stage, the court may not make

6     credibility determinations or weigh conflicting evidence. *Soremekun v. Thrifty Payless, Inc.*, 509

7     F.3d 978, 984 (9th Cir. 2007) (quotation marks & citation omitted). It must draw all inferences in

8     the light most favorable to the nonmoving party and determine whether a genuine issue of

9     material fact precludes entry of judgment. *Comite de Jornaleros de Redondo Beach v. City of*

10     *Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks & citation omitted). The

11     court determines only whether there is a genuine issue for trial. *Thomas v. Ponder*, 611 F.3d

12     1144, 1150 (9th Cir. 2010) (quotation marks & citations omitted).

13        **B.  Deliberate Indifference to Serious Medical Needs**

14        Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a

15     prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need

16     is serious if failure to treat it will result in '"significant injury or the unnecessary and wanton

17     infliction of pain."'" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (quoting *Jett v.*

18     *Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006), quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059

19     (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th

20     Cir. 1997) (en banc)). "A prison official is deliberately indifferent to that need if he 'knows of and

21     disregards an excessive risk to inmate health.'" *Peralta*, 744 F.3d at 1082 (quoting *Farmer v.*

22     *Brennan*, 511 U.S. 825, 837 (1994)).

23        To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must

24     first "show a serious medical need by demonstrating that failure to treat a prisoner's condition

25     could result in further significant injury or the unnecessary and wanton infliction of pain. Second,

26     the plaintiff must show the defendants' response to the need was deliberately indifferent."

27     *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096

28     (quotation marks omitted)).

As to the first prong, indications of a serious medical need "include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation and internal quotation marks omitted); accord *Wilhelm*, 680 F.3d at 1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000).

As to the second prong, deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.*, at 847. In medical cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d 1122 (quoting *Jett*, 439 F.3d at 1096). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096 (citing *McGuckin*, 974 F.2d at 1060).

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id.* (quoting *Gibson v. County of Washoe, Nevada*, 290 F.3d 1175, 1188 (9th Cir. 2002)). To prevail on a deliberate-indifference claim, a plaintiff must also show that harm resulted from a defendant's wrongful conduct. *Wilhelm*, 680 F.3d at 1122; *see also Jett*, 439 F.3d at 1096; *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (prisoner alleging deliberate indifference based on delay in treatment must show delay led to further injury).

7

## IV.    DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

Defendants submit the following undisputed facts (UDF):

1.  At all relevant times, Plaintiff Marino Antonio Hernandez was incarcerated by the California Department of Corrections and Rehabilitation (CDCR) at Substance Abuse Treatment Facility (SATF)

2.  On July 16, 2018, Plaintiff was seen by Dr. Marcelo via telemedicine for a chronic care follow-up visit. The examination was conducted with the assistance of licensed vocational nurse Karen Rodriguez. Dr. Marcelo noted that Plaintiff had a history of hip pain, and his prior x-rays showed mild hip osteoarthritis. Plaintiff stated that the pain was excruciating and constant. However, Plaintiff was able to perform all activities of daily living without problems. During the visit, Plaintiff declined to get up from his wheelchair. Dr. Marcelo noted that Plaintiff over exaggerated pain with any minimal movement, but when distracted, Plaintiff had full range of motion of all extremities and spine. Dr. Marcelo noted that Plaintiff stated that he was given a wheelchair because of his left foot. Plaintiff has a history of open reduction and internal fixation (ORIF) of left foot and x-ray of his left foot from December 15, 2017, revealed severe arthrosis and postsurgical changes. Plaintiff denied swelling of his left ankle/foot. Plaintiff stated that he could not move his foot or walk because of the ankle pain, but denied any problems with his activities of daily living. The physical examination of his back revealed full range of motion, Plaintiff was able to move back and forth and side to side without any problems or difficulties. Examination of his neck was supple. Examination of his extremities revealed no visual abnormalities of his bilateral knees. Examination of his left foot was notable for an old healed surgical scar, without redness or swelling, and Plaintiff was able to passively dorsi flex and plantar flex. Plaintiff was able to propel himself out of the exam room. Dr. Marcelo concluded that, as to chronic left foot pain, there were no red flags per examination. Dr. Marcelo advised Plaintiff of the physical examination findings, that he did not see a medical indication for a wheelchair, and discontinued the wheelchair. Plaintiff was

advised he would keep his cane and lower bunk and lower tier housing. He was further

advised to perform a home exercise program, and to continue with the non-steroidal

anti-inflammatory drug (NSAID) sulindac, Tylenol, and Capsaicin cream as needed

for pain. As to Plaintiff's hip pain, Dr. Marcelo concluded that Plaintiff had mild hip

arthritis, recommended NSAIDs as needed, and advised that there was no medical

indication for a wheelchair. Dr. Marcelo encouraged Plaintiff to walk, use his cane,

and educated Plaintiff that walking would be beneficial for him

3.  Concurrently with the July 16, 2018 examination of Plaintiff, Dr. Marcelo completed

CDCR Form 1845, which is the official source document used when making decisions

regarding placement and housing due to offender disabilities, which noted that there

was no mobility restriction, that Plaintiff uses hands to assist with mobility via the use

of a cane or crutch, and was authorized the housing accommodation of a lower

bunk/tier

4.  On August 14, 2018, Plaintiff was seen by Chika Mbadugha, Physician's Assistant

(PA) after requesting reevaluation of a past history of kidney stones. It was noted that

Plaintiff denied any joint pains, swelling, stiffness, muscle weakness, and pain.

Physical examination was notable for Plaintiff walking with a cane in no apparent

distress, a back exam without costovertebral angle tenderness, and Plaintiff's

extremities revealed normal range of motion and strength, without tenderness or

swelling

5.  On September 9, 2018, Plaintiff was seen by nurse practitioner Melanie Alvarado.

Plaintiff requested to be evaluated for the need of a wheelchair, permanent cane, back

brace, ankle brace, orthotic shoes, and referral to an orthopedic surgeon. It was noted

that Plaintiff stated his main concern was getting a back brace and left ankle brace,

which he previously had. It was further noted that Plaintiff ambulated with cane with a

limp, but that his gait seemed to improve on his way out of the office compared to the

way into the office. Plaintiff was not cooperative with the examination, resulting in the

conclusion that the value of the examination was limited. Plaintiff indicated that he did

not want surgery, so it was determined that there was no indication for an orthopedic surgery referral. It was ordered to issue the ankle brace and continue conservative management, and no indication for an orthotics referral. As for his back, x-rays of Plaintiff's lumbar spine were ordered, Plaintiff was to continue using his cane, and the decision regarding the wheelchair was to be deferred, pending review of the x-rays, considering limited value of the examination due to Plaintiff's poor cooperation

6. On October 4, 2018, Plaintiff was seen by PA David Oberst, as a chronic care follow-up to the July 16, 2018 visit with Dr. Marcelo. The September 11, 2018, x-ray of the lumbar spine revealed moderate degenerative changes at L5-S1. It was noted that Plaintiff denied a loss of ability to perform activities of daily living. The examination revealed that Plaintiff was observed walking across the entire yard with appropriate use of his cane. Plaintiff was advised to continue with current medical therapy with the addition of physical therapy

7. On October 17, 2018, Plaintiff was seen by PA Chika Mbadugha, requesting a referral to orthotics for a new ankle foot orthotic for his left foot. PA Mbadugha observed the soles of Plaintiff's orthotic shoes to be coming apart, and issued a referral to orthotics. For ankle pain, Plaintiff was advised to stretch and apply warm compressions, and take acetaminophen when necessary

8. On November 19, 2018, Plaintiff was seen by Dr. Ndu because PA Mbadugha's orthotics referral was denied, with the request to include physical examination findings on a new referral. Dr. Ndu noted that Plaintiff had a history of a gunshot wound to his left ankle and ORIF surgical procedures in 1983 and 1990. Plaintiff complained of left ankle pain, which was aggravated by walking, and he used a cane. Plaintiff denied recent falls or problems managing his activities of daily living. Plaintiff did not complain of back pain. Physical examination revealed Plaintiff's left ankle joint was tender to palpation with reduced range of motion, and that Plaintiff walked with a limp. Plaintiff was referred to orthotics for orthopedic shoes, advised to continue Sulindac, and to follow-up with chronic care clinic. Plaintiff did not request a

1   wheelchair during his first visit with Dr. Ndu

2   9.  On December 28, 2018, Plaintiff was seen by PA Mbadugha requesting a wheelchair

3       and lower tier/lower bunk accommodation, and he had an expired temporary cane that

4       needed to be reviewed. It was noted that Plaintiff's ankle care was being managed

5       with shoes and a referral to orthotics for replacement shoes was pending, and that

6       there were no interval changes since July (i.e., approximately five months). PA

7       Mbadugha noted "there is no medical indication for a wheelchair at this time. He

8       ambulates well with a cane." Plaintiff's referral to physical therapy was pending.

9       Plaintiff's cane was renewed for six months, lower tier/lower bunk accommodation

10      was also renewed. It was noted that Plaintiff agreed with the plan of care.

11  10. On January 3, 2019, Plaintiff was consulted by physical therapist Estere Moreno, PT.

12      Plaintiff was referred to physical therapy for lower extremity strengthening and back

13      pain. It was noted that Plaintiff reported that he was only interested in getting a

14      wheelchair and that he declined further physical therapy services. The physical

15      examination revealed bilateral hip and knee within functional limits, and bilateral

16      ankle was 50 percent limited. Plaintiff was educated to the benefits of exercise, and

17      that since he demonstrated the ability to walk, even if it was short distances, to

18      continue walking to maintain this, as a wheelchair would only hinder this and could

19      lead to a loss of function. A wheelchair was not recommended at that time. Plaintiff

20      was assessed for a walker, but declined.

21  11. On January 16, 2019, Plaintiff was seen by Dr. Ndu because Plaintiff's orthotics

22      referral was denied due to not meeting InterQual2 criteria for orthopedic shoes.

23      Nonetheless, Dr. Ndu resubmitted another orthotics request with more detailed

24      information, which was approved. Although Plaintiff complained of left ankle pain, he

25      ambulated with a cane, and reported no problems with his activities of daily living

26  12. On April 18, 2019, Plaintiff was seen by Dr. Ndu for a chronic care follow up

27      appointment. Plaintiff was requesting a lower bunk and lower tier accommodation. It

28      was noted that Plaintiff complained of left ankle pain, which was worse when walking.

11

Plaintiff was using a cane, but requested a wheelchair. Plaintiff was recently fitted for new orthopedic shoes and an ankle foot orthotic brace, which was to be delivered at Plaintiff's next orthotics clinic visit. Plaintiff was offered a walker, but refused, and elected to continue using a cane. Dr. Ndu determined that there was no medical indication for a wheelchair. The NSAID ibuprofen was to be used as needed for pain

13. On June 12, 2019, Plaintiff was seen by PA Oberst. The purpose of the visit was to reevaluate Plaintiff's temporary order for a cane. Plaintiff had no new complaints of any pain or discomfort. Plaintiff was given another receipt for a cane, as permanent.

14. On July 24, 2019, Plaintiff was seen by PA Mbadugha to be evaluated for a wheelchair. It was noted that Plaintiff got mad and left without being examined. He was advised to continue his home exercise program and to take Acetaminophen, as needed.

15. On August 27, 2019, Plaintiff was seen by Dr. Ndu complaining of worsening back and hip pain. Plaintiff complained that the pain was so bad that he had difficulty walking with a cane. He requested a wheelchair. He did not report recent falls or radicular symptoms. It was noted that Plaintiff stated that he was upset with Dr. Ndu for writing in the progress note that he requested a wheelchair to facilitate a transfer. Plaintiff was asked whether he was taking his pain medication and although he responded that he was never given pain medication, he was informed that he had the NSAID Naproxen and Acetaminophen on file. Regardless, he said he did not request pain medication and that he last took pain medication in April 2019. It was noted that Plaintiff climbed onto the examination table without assistance. It was further noted that the lumbar spine x-ray showed mild to moderate mid and lower lumbar spine degenerative changes that were stable. The x-ray of the left hip showed mild osteoarthritis. Plaintiff had also been referred to physical therapy, but showed no desire to participate. It was concluded that there was no indication for a wheelchair and that secondary gain could not be ruled out. Plaintiff was advised to continue current pain medications.

16. On October 10, 2019, Plaintiff was seen by Dr. Ndu for a chronic care follow-up visit. Plaintiff requested a referral to orthopedic surgery and a wheelchair. He did not complain of hip or back pain. He advised that he was using a cane and ankle brace, but stated that he was having difficulty getting to the yard programs and dining hall. Dr. Ndu ordered an updated x-ray of his left ankle, a referral to orthopedic surgery for possible removal of orthopedic hardware, and issued a wheelchair.

17. California Correctional Healthcare Services (CCHCS), through Utilization Management, has established a Durable Medical Equipment and Medical Supply Formulary, which sets forth the standard for medical necessity, with regard to the issuance of durable medical equipment to patient/inmates within CDCR.

18. The establishment of medical necessity for a wheelchair pursuant to the CCHCS Durable Medical Equipment and Medical Supply Formulary includes, (1) Patient has a mobility limitation that significantly impairs his/her ability to participate in one to two mobility related activities of daily living (MRADL) such as toileting, feeding, dressing, grooming and bathing, (2) Patient has other conditions that limits his/her ability to participate in MRADLs such as significant impairment in cognition, judgment, or vision, (3) Patient has the capability and willingness to safely operate the wheelchair, (4) Patient has sufficient upper extremity function to propel a manual wheelchair, (5) Patient has a disease process or injury for which weight bearing and/or ambulation is contraindicated, (6) Patient has a disease process or injury that precludes the use of the lower extremities (i.e., neuromuscular disease).

19. Dr. Bennett Feinberg, the Chief Medical Consultant for the CCHCS Office of Legal Affairs, opines in support of Defendants' motion (Doc. 65-1) that Plaintiff has been offered adequate and appropriate medical care and the course of treatment offered was medically acceptable, and does not fall below the standard of reasonable medical care.

20. Dr. Feinberg opines that no Defendant physician was deliberately indifferent to Plaintiff's medical needs by discontinuing his wheelchair and other durable medical equipment.

13

21. Treating physicians Dr. Marcelo and Dr. Ndu each have submitted a declaration under oath in which they attest to providing high quality medical care to Plaintiff to the best of their abilities. All Defendants have declared that they never bore him any personal animus or ill will, and that any decision regarding the discontinuation of durable medical equipment was always made to achieve the goal of improving his personal health and well-being.

(*See* Doc. 65-6.)

Plaintiff has submitted a "Separate Answer to the Defendants' Separate Statement of Undisputed Material Facts, and Plaintiff's Statement of Disputed Material Facts with Supporting Evidence in Support of Plaintiff's Opposition to Defendants' Summary Judgment Motion." (*See* Doc. 74 at 10-19.)

This Court's Local Rule 260(b) provides, in pertinent part:

> **Opposition**. Any party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial. The opposing party may also file a concise "Statement of Disputed Facts," and the source thereof in the record, of all additional material facts as to which there is a genuine issue precluding summary judgment or adjudication. The opposing party shall be responsible for the filing of all evidentiary documents cited in the opposing papers. See L.R. 133(j).

The Court's review of Plaintiff's submission indicates Plaintiff has addressed sixteen of Defendant's twenty-one statements of undisputed material fact. (Doc. 74 at 11-12.) The Court construes each of Plaintiff's responses to be denials because while Plaintiff admits some portion of the UDF at issue, he takes issue with its remainder. For example, Defendants' UDF No. 1 states: "At all relevant times, Plaintiff Marino Antonio Hernandez was incarcerated by the California Department of Corrections and Rehabilitation (CDCR) at Substance Abuse Treatment Facility (SATF)." In response, Plaintiff states: "Plaintiff admits U.M.F.#1, because he is incarcerated by the CDCR, at the California Substance Abuse Treatment Facility, 'CSATF,' and that he is identified as Marino Antonio Hernandez in his medical records, *but his real name is*

14

*Marino Hernandez Antonio*."  (Doc. 74 at 11, emphasis added.) As another example, in Plaintiff's

number 4, responding to Defendants' "U.M.F. #4 through #16," Plaintiff states he admits he was

seen on the dates referenced, but "categorically" denies he received the "medical care he was

needing." (*Id.* at 12.) Defendants' UDFs are to be viewed individually as an undisputed material

fact. Because Plaintiff does not agree with the entirety of Defendants' UDF Nos. 1 through 16, all

are construed to be denials. The Court will not parse each individual sentence in a UDF to

identify that sentence as either admitted or denied. Said another way, if the whole of the

individual UDF is not admitted, it is denied.

In summary, Plaintiff denies Defendants' UDF Nos. 1 through 16. Because Plaintiff

neither admits nor denies UDF Nos. 17 through 21, the Court would typically construe the

absence of a response to UDF Nos. 17 through 21 to be admissions. *See, e.g.*, *Beard v. Banks*, 548

U.S. 521, 527 (2006) ("by failing specifically to challenge the facts identified in the defendant's

statement of undisputed facts, [plaintiff] is deemed to have admitted the validity of the facts

contained in the [defendant's] statement"). Here, however, because Plaintiff's own separate

statement, addressed below, clearly takes issue with UDF Nos. 19 through 21, the Court construes

those UDFs to be denied. Finally, because Plaintiff does not address UDF Nos. 17 and 18, the

Court construes both to be admissions. *Beard*, 548 U.S. at 527.

**V.      PLAINTIFF'S SEPARATE STATEMENT OF DISPUTED FACTS**

As noted above, Plaintiff has submitted a "Separate Answer to the Defendants' Separate

Statement of Undisputed Material Facts, and Plaintiff's Statement of Disputed Material Facts

with Supporting Evidence in Support of Plaintiff's Opposition to Defendants' Summary

Judgment Motion." (*See* Doc. 74 at 10-19.)

The Court's review of the document indicates Plaintiff has submitted six "statements of

disputed material facts." They are as follows:

1.   Dr. Marcelo called Plaintiff on 7/16/18, to the clinic, not for an examination, but with

the only purpose to deprive him of the use of his wheelchair as he did with many other

disable inmates. [Citation omitted.] Dr. Marcelo, disregarded with total deliberate

indifference Plaintiff's serious medical needs because "in his avid [*sic*] to cause

15

harm," he **lied infamously** in his PCP Progress Note, and in his Medical Classification 1845 Chrono (MCC) dated on 7/16/2018, about Plaintiff's disability. Dr. Marcelo, disregarded policy and procedures of the California Code of Regulations (CCR) Title 15, § 3999.395(b); § 3999.390(a); § 3999.394(a)(g), and he infringed the California Penal Code § 2656(a)(d), which specify: "**NO person incarcerated in any facility of the Department of Corrections shall be deprived of the use or possession of any orthopedic or prosthetic appliance prescribed or recommended by a physician unless both, the inmate's personal physician and a department physician concur in the professional opinion that such appliance is not longer needed**." [¶] Dr. Marcelo never did an examination to the Plaintiff. Neither he directed to Nurse Karen Rodriguez, to palpate Plaintiff's neck, arms, legs, or to use a Bluetooth stethoscope examining Plaintiff, as Dr. Marcelo declared under penalty of perjury, clearly committing perjury, and this can be proved with the video record of this medical encounter Plaintiff-Defendant, on July 16, 2018. [Citations omitted, emphasis in original.]

2. Dr. Marcelo **lied about** Plaintiff's disability on his MCC 1845 medical chrono because in his Response to Plaintiff's Interrogatory No. 3, he stated that "his diagnosis [*sic*] was based on Plaintiff's most recent medical records. Plaintiff's prior MCC 1845, medical chrono signed by Desiree Hermosillo, on 7/20/17 [citation], verify Plaintiff's disability, severe mobility restrictions, severe orthopedic conditions of hips, knees, ankles, feet, and upper extremity. Dr. Marcelo reviewed Plaintiff prior X-rays of hips and left ankle which revealed mild osteoarthritis, and severe arthrosis as he annoted in his PCP Progress Note [citation]. And even he choiced [*sic*] to caused harm to the Plaintiff removing his mobility restrictions [citation], disregarding Plaintiff's prior orthopedic physician evaluations, and physician radiologists diagnosis. [Citations.] Dr. Marcelo disregarded policy and procedures of the CDCR- California Correctional Health Care Services, Operation Manual, Chapter 1, Article 2, § 14(D)(E)(F)(1) Medical Classification System, regarding to the issuance of a new MCC, specifying

that "if the prior MCC is a Permanent Chrono, a new reclassification is not needed. [Citation.] [¶] As proof of Dr. Marcelo **infamously lies**, Plaintiff points out to the Court the Doctor Akabike Nkiruka "Ndu"'s MCC 1845, medical Chrono, dated on 4/18/2019, confirming Plaintiff's disability, and his severe mobility restrictions. [Citation.] Also see the Orthopedic Report of Dr. Renee Smith, diagnosing Plaintiff with complete loss of ankle joint with three fractured screws on the distal tibia, and recommending a Wheelchair for long distances, and cane for short distances to the Plaintiff. If this is not proof, see Dr. Davidov's MCC 1845, medical chrono, dated on 3/5/2021, confirming Plaintiff' disability, and his severe mobility restrictions. Dr. Renee Smith's evaluation was on 1/22/2020. [Citations omitted, emphasis in original]

3. When Dr. Marcelo removed Plaintiff's mobility restrictions in his MCC 1845, medical Chrono, he was assigned to work on 7/31/18, forced to work or receive one disciplinary CDC 115, if he refused to work. His job was walking around the yard, picking-up the trash five days a week, eight hours a day. Plaintiff's left ankle caused him severe pain due to fractured screws in his distal tibia, and he limping of his left leg by the pain. [Citations.] [¶] Plaintiff's removed from his assigned bed G2-5-4 Low, on 9/21/2018, because his medical accomodations of Lower Bunk/Lower tier was discontinued on 7/16/2018, by Dr. Marcelo. He was rehoused in F2-23-4 Low, second tier, but the Correctional Officer, at the time, 19:04 hours, on 9/21/2018, saw that Plaintiff was not able to walks upstairs, he decided to rehouse him in Pod 3, 1 Low of the Lower tier at 20:40 hours. [Citation.] The Plaintiff's Bed Assignments, is proof of Dr. Marcelo's deliberate indifference to Plaintiff's serious medical needs. [Citations.] [¶] Also, the Dr. David Oberst's PCP Progress Note, dated on 12/21/2018, confirming that the Plaintiff has **positive antalgic gait** due to his severe pain in his left ankle, and renewing his medical Chrono Lower Bunk/Lower tier, is evidence of Dr. Marcelo's deliberate indifference and his only purpose depriving Plaintiff of his wheelchair, and mobility restrictions was to cause **harm and unnecessary pain** to the Plaintiff, and but some reason Dr. David Oberst's PCP Progress Note, was not mentioned at the

Defendants' Separate Statement of undisputed Facts, neither was mentioned in Doctor Bennett's Declaration. Plaintiff is pointing out this to the Court. [Citation omitted, emphasis in original]

4. Dr. Ndu was deliberately indifferent to Plaintiff's serious medical needs, denying and delaying the medical care he was needing, as her responses in her PCP Progress Notes to Plaintiff's Fourteen Health Care Request Services Form 7362s [citations] prove it. Plaintiff complained in said 7362's forms about suffering pain walking to the chow hall, and not being able to do his daily activities [citation]. [¶] On 4/18/2019, Plaintiff requested Dr. Ndu, to be provided a wheelchair. Dr. Ndu's answer was, **if I give you a wheelchair I will lose my license,** in a tone of voice like a joke. Plaintiff requested her to be referred to an specialist doctor verbally and in a 7362 form #6434628, dated on 4/24/2019, disregarding Plaintiff's requests. Dr. Ndu completed on 4/18/2019, a new Medical Classification Chrono MCC 1845, without Plaintiff's knowledge, but confirming Plaintiff's disability, and his severe mobility restrictions, with **permanent status**. This MCC proves that Dr. Marcelo **lied maliciously** in his PCP Progress Note, and in his Medical 1845 chrono about Plaintiff's disability. [¶] **Dr. Ndu, wrote defamatory statements in her PCP Progress Note, on 4/18/2019, that the Plaintiff did not say to her. She wrote, "He request wheelchair. He says custody staff asked him to request a wheelchair because it facilitate his transfer to another Soledad so he could near his family. He says he does not need a wheelchair because he can walk. He says he walks daily and can do several laps at a time." Her statements prejudiced Plaintiff because Dr. Chika denied him a wheelchair because Plaintiff said to his PCP that he walks several laps at a time. [Citations.] [¶] Dr. Ndu, disregarded policy and procedures of the California Code of Regulations CCR, Tile 15, §343 (a)(6)(A((1)(2). [Citations.] Also She refused to receive Plaintiff after February 3, 2020** [Citations omitted, emphasis in original].

5. Plaintiff needed a Fusion Surgery recommended by three orthopedic doctors [citations]. From 2015, he has been requesting to his PCP Medical doctors, a referral

to orthopedics. [Citations.] Plaintiff requested Dr. Marcelo on 7/16/2018, be referred to an orthopedic surgeon being ignored. [Citations.] [¶] Plaintiff requested verbally many times to Dr. Ndu to be referred to an orthopedic specialist. She always ignores Plaintiff words [citations]. At the end, when Dr. Ndu granted the referral to an orthopedic doctor on 10/10/2019, and Plaintiff had the medical encounter with the Orthopedic Doctor Renee Smith, MD, on 1/22/2020, and the orthopedic specialist reviewed Plaintiff's X-rays, she told him why didn't he ask for the specialist appointment before, because at this time 1/22/2020, the Fusion Surgery could not be performed any more because he had complete loss of his ankle joint and he was going to live with his left ankle like that. [Citation.] This is proof of the denial and delay of medical care to Plaintiff serious medical needs.

6.  Dr. Bennett Feinberg's declaration and his medical opinion shouldn't be admitted by the Court by the following grounds: He was never present in none of the medical events mentioned in his declarations, numbers 9, 11, through 27, he only made a recount of every PCP Progress Note mentioned in his recount assuring that Plaintiff was examined by Dr. Marcelo on 7/16/2018. [¶] He declared under penalty of perjury that his medical opinions are based on his analysis of the operative complaints and medical records kept by CDCR and CCHCS. [Citation.] Therefore, why he didn't mention: a) Dr. Desiree Hermosillo's Medical Classification 1845 Chrono ("MCC"), dated on 7/20/17, Plaintiff's prior medical chrono; b) Dr. Ndu's "MCC" dated on 4/18/2019; c) Dr. Davydov's "MCC" dated on 3/5/2021, all these three medical chronos confirming Plaintiff's disability, and his mobility severe restrictions proving that Dr. Marcelo lied infamously about Plaintiff's disability. [Citation.] [¶] Why he didn't mention Dr. David Oberst's PCP Progress Note, dated on 12/21/2018, renewing the Lower Bunk/Lower Tier medical Chrono that Dr. Marcelo descontinued from the Plaintiff with the excuse of that him had no disability on 7/16/2018. Dr. Oberst stated in his PCP progress Note that Plaintiff has positive antalgic gain. (this mean that Plaintiff limps from his left ankle due to his severe pain caused by the fractured screws

19

in his left ankle). Dr. Bennett didn't mention these documents because this proves Defendants' deliberate indifference to Plaintiff's serious medical needs. Also, he didn't mention Plaintiff's orthopedic evaluation, by Dr. Renee Smith [citation], recommending wheelchair to the Plaintiff, "why he didn't mention it? [¶] Dr. Bennett did commit perjury when he asserted facts based only in Defendants' PCP Progress Noted with the purpose to cover Defendants' deliberate indifference. Dr. Bennett violated the California Code of Regulations, Title 15, Chapter 1, Subchapter 5, Article 2, § 3413(a)(10)(A)(A)(c), unless he proves that he notified in writing to the Chief Deputy General of Legal Affairs that he was going to give a medical opinion in a civil case. Also, Dr Bennett violated Plaintiff's Protected Information pursuant to CCR, Title 15, Chapter 2, Subchapter 2, Article 3, § 3999.215(a)(3)(c)(7)(F)(2), when the Plaintiff was not notified that he was going to give medical opinion using Plaintiff's Protected Health Information. [¶] Dr. Bennett committed perjury when he attested that Plaintiff was examined, that he received a high quality of medical care when that was not true. Dr. Bennett omitted deliberately Plaintiff's medical records confirming Plaintiff's disability and his severe mobility restrictions, including in the operative complaint…. [¶].

(Doc. 74 at 13-19.)

## VI. EVIDENTIARY MATTERS

### A. Defendants' Request for Judicial Notice

Defendants request this Court take judicial notice of the authenticity and content of the California Correctional Health Care Services (CCHCS)[4] Durable Medical Equipment and Medical Supply Formulary, available online, pursuant to Rule 201(b) of the Federal Rules of Evidence. (Doc. 66.) Plaintiff has not opposed the request.

Pursuant to Federal Rule of Evidence 201(b), a court "may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known with the trial court's territorial

---

[4] "In 2005, a federal receivership was established over all prison medical care in the state of California and the California Correctional Health Care Services ('CCHCS') was created." *Ochoa v. Von Lintig*, No. 19-cv-346-MMA (JLB), 2021 WL 5303779, at *1 (S.D. Cal. Nov. 15, 2021).

jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

Having reviewed the CCHCS Durable Medical Equipment and Medical Supply Formulary, the Court finds that it is generally known and not subject to reasonable dispute. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) (a court may take judicial notice of "information [that] was made publicly available by government entities" where "neither party disputes the authenticity ... or the accuracy of the information"); *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1223 n.2 (9th Cir. 2004) (court "may take judicial notice of a record of a state agency not subject to reasonable dispute"); *Valdez v. Zhang*, No. 20-CV-736 JLS (WVG), 2023 WL 2657626, at *3 (S.D. Cal. Mar. 27, 2023) (pursuant to FRE 201(b), judicial notice taken of "the CCHCS Pain Management Guide Part 2"); *Paralyzed Veterans of Am. v. McPherson*, No. C064670SBA, 2008 WL 4183981, at *5 (N.D. Cal. Sept. 9, 2008) (noting that "government agency websites [] have often been treated as proper subjects for judicial notice" [citing cases]).

Accordingly, the Court grants Defendants' request and takes judicial notice of the CCHCS Durable Medical Equipment and Medical Supply Formulary.

## VII.   DISCUSSION

### A.  The Parties' Positions

#### 1.   Defendants' Motion

Defendants contend Dr. Ndu was not deliberately indifferent to Plaintiff's serious medical needs. (Doc. 65 at 14.) Defendants agree for purposes of their motion that Plaintiff's medical conditions are serious. (*Id*. at 14-15.) Defendants contend that Plaintiff's allegations regarding Dr. Ndu "constitute nothing more than a disagreement with the appropriate course of evaluation and treatment," and thus are legally insufficient to support the claim. (*Id*. at 16.) Defendants assert Dr. Ndu's examinations of Plaintiff indicate he was able to ambulate with a cane and did not report difficulties with his activities of daily living, citing to the findings of other CDCR medical personnel and Plaintiff's job as a yard worker. (*Id*. at 17.) They assert Dr. Ndu's decision not to reinstate Plaintiff's wheelchair was consistent with the CCHCS Durable Medical Equipment and Medical Supply Formulary and that the doctor provided "continuous care to Plaintiff in dealing

21

with his medical conditions," including referrals for orthotics and appliances, prescribing pain medications, encouraging physical therapy, and offering a walker. (*Id*.) Defendants contend there is no evidence to suggest Dr. Ndu's treatment was insufficient or caused Plaintiff further injury, nor is there any evidence to suggest Dr. Ndu knowingly disregarded a substantial risk of harm to Plaintiff. (*Id*. at 17-18.)

Defendants further contend there is no evidence Dr. Marcelo was deliberately indifferent to Plaintiff's serious medical needs. (Doc. 65 at 17.) Defendants cite to the examination and findings of July 16, 2018 by Dr. Marcelo, as well as the CCHCS Durable Medical Equipment and Medical Supply Formulary concerning medical necessity for a wheelchair, in support of their position. (*Id*. at 16-17.) They assert Dr. Marcelo provided appropriate medical treatment and that there is no evidence Dr. Marcelo knowingly disregarded a substantial risk of harm to Plaintiff based on the encounter of July 16, 2018. (*Id*. at 17.)

Next, Defendants argue that as to both Dr. Ndu and Dr. Marcelo, Dr. Feinberg has opined that Plaintiff was offered adequate and appropriate medical care—that the course of treatment offered was medically acceptable and did not fall below the standard of reasonable medical care. (Doc. 65 at 18.) Dr. Feinberg opined that neither Dr. Ndu nor Dr. Marcelo was deliberately indifferent to Plaintiff's medical needs by discontinuing his wheelchair and other durable medical equipment. (*Id*.)

Lastly, Defendants argue Plaintiff cannot prove that the treatment provided by Defendants caused him harm. (Doc. 65 at 18.)

### a.   *James Marcelo, M.D.*

Defendants' motion is supported by the Declaration of Defendant James Marcelo, M.D. In relevant part, the declaration provides as follows.

Dr. Marcelo declares he saw Plaintiff on July 16, 2018 via telemedicine for a chronic care follow up. (Doc. 65-3, ¶ 5.) The doctor declares he performed a comprehensive assessment. (*Id*.) A telemedicine visit is conducted using high-definition cameras with zoom capability and other interactive equipment like a Bluetooth stethoscope. (*Id*.) Dr. Marcelo declares he completed the examination with that equipment and the assistance of licensed vocational nurse Karen

Rodriguez. (*Id*.) Ms. Rodriguez was present in the examination room. (*Id*.) At the doctor's direction and guidance, Rodriguez assisted in a neurologic exam consisting of directing Rodriguez to palpate Plaintiff's neck for tenderness, arms and legs to assess sensation, and to provide resistance to the arms and legs to assess muscle strength. (*Id*.)

Dr. Marcelo further declares he attempted to provide high quality medical care to Plaintiff with dignity and respect, and that his treatment and decisions regarding the discontinuation of durable medical equipment to Plaintiff was made to achieve the goal of improving Plaintiff's health and well-being. (Doc. 65-3, ¶ 6.) He further declares he has no personal animus or ill will toward Plaintiff, did not intend to cause pain or suffering, and has no knowledge of any conduct of his that was substantially certain to cause Plaintiff distress or wanton infliction of pain. (*Id*., ¶ 7.) Dr. Marcelo denied ignoring any medical condition of Plaintiff's requiring immediate care. (*Id*., ¶ 8.) Plaintiff did not complain of any medical condition while under his care that would require the doctor to summon additional emergency medical care. (*Id*.)

Dr. Marcelo declares the progress notes from his July 16, 2018 examination include all of Plaintiff's complaints made during the respective examinations. (Doc. 65-3, ¶ 10.) The notes further accurately reflect his communications with Plaintiff. (*Id*.) Dr. Marcelo declares Plaintiff was angry and threatened to include him in a federal lawsuit upon learning the doctor did not find a medical indication for a wheelchair and the wheelchair use was to be discontinued. (*Id*.)

Dr. Marcelo declares the CCHCS has established the Durable Medical Equipment and Medical Supply Formulary setting forth the standard for medical necessity regarding the issuance of durable medical equipment to inmate patients within CDCR. (Doc. 65-3, ¶ 11.) He further declares he has always tried to issue durable medical equipment pursuant to those guidelines. (*Id*., ¶ 12.) The doctor's decision to discontinue Plaintiff's wheelchair and other durable medical equipment was consistent with the indications to establish medical necessity. (*Id*.) Dr. Marcelo declares that during his examination of Plaintiff, Plaintiff exhibited full range of motion of all extremities and spine and did not have problems performing his activities of daily living. (*Id*.) The doctor encouraged Plaintiff to walk and use a cane, explaining walking would be beneficial to Plaintiff's overall health. (*Id*.) The decision to discontinue Plaintiff's wheelchair, consistent

with the relevant guidelines, was not done to punish or retaliate against Plaintiff, but for Plaintiff's own health and well-being. (*Id*.) Dr. Marcelo concludes he was not deliberately indifferent to Plaintiff's serious medical needs. (*Id*.)

### b.  Nkiruka Ndu, M.D.

Defendants' motion is also supported by the Declaration of Defendant Nkiruka Ndu, M.D.

Dr. Ndu declares she has always attempted to provide high quality medical care to the best of her training. (Doc. 65-4, ¶ 5.) Her treatment and decisions regarding the issuance of durable medical equipment to Plaintiff were made to achieve the goal of improving his personal health and well-being. (*Id*.) She declares she has no personal animus or ill will toward Plaintiff, did not intend to cause pain or suffering, and has no knowledge of any conduct of hers that was substantially certain to cause Plaintiff pain and suffering. (*Id*., ¶ 6.) Dr. Ndu denied ignoring any medical condition of Plaintiff's requiring immediate care. (*Id*., ¶ 7.) She is unaware of any medical condition complained of by Plaintiff requiring her to summon additional emergency medical care. (*Id*.) Defendant Ndu declares the medical records include all of Plaintiff's complaints made during the respective examinations. (*Id*., ¶ 8.) Further, the medical records accurately reflect the communications between she and Plaintiff. (*Id*.)

Defendant Ndu declares she did not state to Plaintiff "If I give you the wheelchair, I will lose my license." (Doc. 65-4, ¶ 9.) Nor did she tell Plaintiff to "shut up" or comment derogatorily about his pain. (*Id*.) Dr. Ndu declares she would never address her patients in that manner and conducts herself with the utmost professionalism and adheres to all applicable medical board, CDCR and CCHCS guidelines. (*Id*.) The doctor declares the CCHCS has established the Durable Medical Equipment and Medical Supply Formulary setting forth the standard for medical necessity regarding the issuance of durable medical equipment to inmate patients within CDCR. (*Id*., ¶ 10.) Dr. Ndu further declares that while at SATF she has always tried to issue durable medical equipment pursuant to those guidelines. (*Id*., ¶ 11.) Her decision not to issue Plaintiff a wheelchair was consistent with the indications to establish medical necessity. (*Id*.) Dr. Ndu declares that during her course of treatment with Plaintiff, he demonstrated the ability to walk, was able to ambulate with a cane, and did not have any problems performing his activities of

daily living. (*Id.*) The doctor declares that on October 10, 2019, Plaintiff reported he was unable to perform certain mobility related activities of daily living. (Id.) On that basis, Dr. Ndu issued Plaintiff a wheelchair pursuant to CCHCS and CDCR guidelines. (*Id.*) The decision not to issue Plaintiff a wheelchair was not done to punish or retaliate against Plaintiff, but for Plaintiff's own health and well-being. (*Id.*) Dr. Ndu concludes she was not deliberately indifferent to Plaintiff's serious medical needs. (*Id.*)

### c.   Bennett Feinberg, M.D.

Defendants' motion is further supported by the Declaration of Bennett Feinberg, M.D.

Dr. Feinberg declares his medical opinions are based on his analysis of Plaintiff's operative complaint and Plaintiff's medical records maintained by the CDCR and CCHCS. (Doc. 65-1, ¶ 6.) He focused on documents regarding events or claims at issue and medical records prepared at or near the time of the events and recorded by staff with personal knowledge of those events. (*Id.*) Dr. Feinberg was asked to opine whether the medical care provided to Plaintiff was medically appropriate. (*Id.*, ¶ 8.) Dr. Feinberg declares CCHCS has established the Durable Medical Equipment and Medical Supply Formulary setting forth the standard for medical necessity regarding the issuance of durable medical equipment to inmate patients within CDCR. (*Id.*, ¶ 10.) Dr. Feinberg summarized Defendant Marcelo's July 16, 2018 telemedicine visit with Plaintiff and Marcelo's completion of CDCR Form 1845 of that same date. (*Id.*, ¶¶ 11-12.) Dr. Feinberg summarized documentation of Plaintiff's care between August 14, 2018 and October 17, 2018 by Chika Mbadugha, Melanie Alvarado, and David Oberst. (*Id.*, ¶¶ 13-17.) Dr. Feinberg also summarized Defendant Ndu's November 19, 2018 visit with Plaintiff. (*Id.*, ¶ 18.) Further, Dr. Feinberg summarized Plaintiff's visit on December 28, 2018, with Mbadugha, and January 3, 2019 visit with Estere Moreno. (*Id.*, ¶¶ 19-20.) Defendant Ndu's visits of January 16, March 19 and April 18, 2019 are also summarized. (*Id.*, ¶¶ 21-23.) Following review of Plaintiff's June 12 and July 24, 2019 visits with Oberst and Mbadugha respectively, Dr. Feinberg summarizes Dr. Ndu's record of Plaintiff's August 27, 2019 and October 10, 2019 visits. (*Id.*, ¶¶ 26-27.) Dr. Feinberg declares that when an individual is unable to walk for an extended period of time without assistance due to the inability to use a limb, that individual's affected limb will begin to

atrophy, resulting in a loss of strength, muscle weakness, and reduced circumference of the affected limb. (*Id.*, ¶ 28.) Such findings are identifiable by way of physical examination; Plaintiff's physical examinations did not reveal these types of changes and Plaintiff indicated an ability to perform the activities of daily living. (*Id.*)

Dr. Feinberg declares Dr. Marcelo's decision to discontinue Plaintiff's wheelchair and related durable medical equipment was based upon Dr. Marcelo's assessment that Plaintiff was not mobility impaired and is consistent with the CCHCS Durable Medical Equipment and Medical Supply Formulary. (Doc. 65-1, ¶ 29.) He further declares Dr. Ndu's continued discontinuation of Plaintiff's requests for a wheelchair are also consistent with the CCHCS Durable Medical Equipment and Medical Supply Formulary because Plaintiff was able to perform all the activities of daily living until October 10, 2019.  On that date, Plaintiff expressed difficulty "making it to the yard and dining room," which Dr. Feinberg equated to an inability to participate in one to two mobility related activities of daily living, making a wheelchair medically necessary. (*Id.*, ¶ 30.)

In conclusion, following a review of the medical records, and in light of his training and experience, Dr. Feinberg opined Plaintiff was offered timely, adequate and appropriate medical attention and care, and was offered a medically acceptable course of treatment. (*Id.*, ¶ 31.) Hence, Dr. Feinberg concludes Defendants Marcelo and Ndu were not deliberately indifferent to Plaintiff's serious medical needs by discontinuing his wheelchair and other durable medical equipment. (*Id.*)

## 2.  Plaintiff's Opposition

Plaintiff contends his declaration and those of Defendants "are squarely contradictory as to why they deprived and denied a wheelchair to him, or if they were deliberately indifferent[] to Plaintiff's serious medical needs or not." (Doc. 74 at 6.) Plaintiff argues an orthopedic specialist recommended a wheelchair on January 22, 2020, "proving that Plaintiff has a medical necessity" for a wheelchair. (*Id.*) He contends Defendants "denied and delayed the medical care he was needing: the referral to an orthopedist to receive the fusion surgery … recommended by three orthopedic surgeons." (*Id.*) Plaintiff argues the "deprivation" of a wheelchair and the removal of

"his mobility restrictions" in light of his "long history of serious medical needs, was unnecessary, or in a manner excessive to any need, is in itself evidence that Defendants were acting 'maliciously, [sadistically], and with total indifference to cause of harm." (*Id*.)

Plaintiff argues he has a serious medical need. (Doc. 74 at 7-8.) He contends his "severe [osteoarthritis] have had serious [consequences] for him in the form of substantial pain. Thus they 'significantly affect' the Plaintiff's daily activities." (*Id*. at 7.) He further contends Defendants "knew about Plaintiff's serious medical needs, as their PCP Progress Notes confirms it." (*Id*. at 8.) Plaintiff states his complaint alleges he "has suffered significant and recurrent pain on his left ankle, hips, and lower back, due to his severe mobility restrictions. This pain is sufficient to make the Plaintiff's medical needs 'serious.' A reasonable jury could find for the Plaintiff based on the facts in the Plaintiff's declaration, and summary judgment must therefore be denied." (*Id*. at 9.)

In his supporting declaration, Plaintiff declares the following:

> I was arrested on May 2002. I am in custody of CDCR from May 2007. I am a prisoner in the California Substance Abuse Treatment Facility (CSATF) at Corcoran from 8/26/2011, and I am identified as Marino Antonio Hernandez in my medical record but my real name is Marino Hernandez Antonio.
>
> On 7/16/2018, I was called to the G Clinic. I was seen by Dr. Marcelo, via telemedicine online with the assistance of LVN Karen Rodriguez, but they didn't perform any examination to me, as the doctor assured in his PCP Progress Note and in his declaration under penalty of perjury, clearly committing perjury. They only removed my wheelchair, Back Brace, Mobility Impairment Vest, and Gloves from me with the excuse that I had not disability and no evidence of mobility [impairment].
>
> On the same date 7/16/2018, Dr. Marcelo, discontinued my 1845 medical chrono dated 7/20/2017, signed by Desiree Hermosillo, confirming my disability, and my severe mobility restrictions [citations]. He completed a new 1845 medical chrono removing my mobility restrictions and assuring that I had not disability, and no evidence of mobility impairment, and removing my medical Lower Bunk Lower tier [accommodations], without notifying me.
>
> I was seen in several occasions by the doctors named in Defendants' Separate Statement of Undisputed Material Facts, but they continuously denied my requests for a wheelchair, to be referred to an orthopedic specialist, an a proper pain medication as morphine, which was prescribed to me by Dr. Todd, and the Orthopedic Dr. Lovett on 10-9-2008, and [discontinued] without any reason [citation]. Dr. Ndu, denied my request for a Wheelchair, because she could lose her license, but she never mentioned that was pursuant to the CCHCS and CDCR guidelines as she declared in her declaration

27

under penalty of perjury, as she want "now" to have an excuse to her deliberate indifference to my serious medical needs.

I declare categorically that Dr. Marcelo lied infamously and with total medical indifference on 7/16/2018, in his PCP Progress Note, in his 1845 medical chrono, affirming that I had not disability only with the purpose of removing the wheelchair from me, and his action was not pursuant to CCHCS and CDCR guidelines as he declared under penalty of perjury in his declaration …. Neither Dr. Marcelo and Nurse Rodriguez made an examination to me and the proof is that I received my Lower Bunk[/]Lower tier by the Correctional Officer Whitker on 9/21/2018, when I was removed from G yard because Dr. Marcelo discontinued my medical [accommodations] Lower Bunk/Lower tier. The Officer Whitker saw that I had difficulties to walk and I was not able to walk upstairs. My medical chrono Lower/Lower was renewed on 12/21/2018, by Dr. David Oberst, with Dr. Ndu's [approval] [citation]. Also Dr. Ndu confirmed my disability, and my severe mobility restrictions in his 1845 medical chrono dated 4/18/2019. [Citation.] This confirms that Dr. Marcelo lied, sadistically and maliciously.

On 7/16/2018, I told Dr. Marcelo I was not able to walk very well. He annotted my words in his PCP Progress Note, as he noted too that he reviewed my X-rays which revealed severe osteoarthrosis, and my hips showed mild arthritis. With that information, even like that he removed my mobility restrictions. By that reason, I was assigned to work on 7/31/2018, as a Yard Crew-Clean-up Worker, five days a week, eight hours a day, walking around the yard picking up the trash, or receive a disciplinary 115 if [I] refuse to work. I was humping as a Kangaroo, due to the severe pain in my left ankle and the people taking funny of my medical condition.

……………………………………………………………………….

Dr. Ndu never game me high quality of medical care as she declared in her declaration in support of her motion. On the contrary she was deliberately indifferent to my serious medical needs because she was well aware of my serious medical needs as her PCP Progress Notes proves this. I don't know why she wrote such statements in her PCP Progress Note dated 4/18/2019 [citation], when doctors never speaks about familiar affairs and less they do not write that in their computers. Also I don't have family close to Soledad. I never said such statements she wrote in her computer. Why she did it? The only I know was that she denied my request for an orthopedic referral, and for a wheelchair and she disregarded [thirteen] Health Care Service Request 7362 Forms where I complained about my severe pain when walking to the chow hall, as the Terry L McGee's Declaration confirms the pain and suffering I was passing, struggling to walk. [Citation.]

I was requesting to be referred to an specialist surgeon from 2015, but Dr. Winfred Kokor provided me with a wheelchair instead on 9/21/2015. The wheelchair relieved my pain because I was not walking. When Dr. Marcelo removed my wheelchair, I asked him to be referred to an orthopedist doctor but he ignored my words. Dr. Ndu disregarded my request for a referral many times, but on

10/10/2019, I don't know why, she called me to the F Clinic and told me "what do you want? To see the orthopedist, or a wheelchair?" I told her "I need a wheelchair, but I need to see the orthopedist too because I cannot bear this pain any more." My intention was to request to the orthopedic doctor, to prescribe[] a proper pain medication morphine to my pain, but when the orthopedist told me that the referral was too late and the fusion surgery could not be done I got left [without] words. On January 22, 2020, when the Orthopedic Dr. Renee Smith told me that why I did not ask to be referred before to the orthopedist, because perhaps the fusion surgery could be done but was to late because my ankle was completely loss and now I need to live with the pain for the rest of my life. Defendants' disdain to my requests for referral is a delay of medical care….

Defendants' Declarations claims in summary that they did not violate my Eighth Amendment Rights when the supporting evidence shows the contrary. Defendants are not entitled to summary judgment because there are genuine issues of material fact to be resolved. These issues are identified in the accompanying Statement of Disputed material Facts filed with this … opposition …, pursuant to Local Rule 260(b).

Dr. Bennett's[5] medical opinion is mistrusted and should not be admitted by the Court because according to his own words in his declaration under penalty of perjury … his opinion is based on the operative complaint and Plaintiff's medical records. Why then he did not mention Plaintiff's prior 1845 medical chrono dated on 7/20/2018, confirming my disability, and my severe mobility restrictions? Why then he did not mention Plaintiff's post 1845 medical chrono signed by Defendant Nkiruka Ndu, on 4/18/2019 confirming my disability, and my severe mobility restrictions? [¶] Dr. Bennett's declaration … mentioning Dr. Ndu's PCP Progress Noted dated on 11/19/2018, then … he mentioned the PCP Progress Note dated 12/28/2018, of PA Mbadugha, but Why he did not mention the PCP Progress Note signed by PA David Oberst, renewing my Lower Bunk/Lower tier medical chrono that Dr. Marcelo infamously and [sadistically] discontinued on 7/16/2018? Dr. Bennett did not mention[] this document because Dr. David Oberst confirmed that I have a "positive antalgic gait" this mean that I limp of my left ankle due to the severe pain caused by my severe osteoarthritis. [Citation.] The PCP Progress Note signed by PA David Oberst is dated on 12/21/2018, and it is filed in my medical records and was excluded to purpose, wanting to cover Defendant Marcelo's deliberate indifference.

………………………………………………………………………….

If this allegation is going to the trial, I request to the Court to appoint an independent medical expert under Rule 706(a) of the Fed. R. of Evid. to make an examination of me and give a fair medical opinion, not from Dr. Bennett's unfair medical opinion; I request that the LVN Karen Rodriguez, be called to the stand because she is a key witness in this genuine issue of material fact; and I request that

---

[5] The physician's full name is Bennett Feinberg, M.D. *See* Doc. 65-1. Plaintiff's references to "Dr. Bennett" are understood be references to Dr. Feinberg.

Defendant Marcelo present before the Court the video-recording of the event occurred on 7/16/2018, because I requested him in a motion for Production of Stored Information on August 10, 2022, and to this date I have not answer to my request, and this video-recording is the proof that Dr. Marcelo committed perjury, and he acted sadistically, maliciously, and with total deliberate indifference to my serious medical needs. [Citation.]

Defendants are not entitled to summary judgment because there are genuine issues of material fact to be resolved at trial. These issues are identified in the accompanying Statement of Disputed Material Facts filed with this … opposition to Defendants' summary judgment motion ….

The foregoing factual allegations create a genuine issue of material fact, if proved at trial, will support judgment in my favor, as explained in the brief submitted with this declaration.

(Doc. 74 at 164-172.)

### 3. Defendants' Reply

Defendants argue Plaintiff has failed to come forward with any evidence that raises a factual dispute that Defendants knew of and disregarded an excessive risk to Plaintiff's health or safety in the course of their evaluation and treatment of Plaintiff. (Doc. 79 at 2.) Defendants assert the medical evidence and treatment provided to Plaintiff, and the opinions of medical providers, "are nothing more than a difference of opinion, and does not amount to deliberate indifference on the part of Defendants Drs. Marcelo and Ndu." (*Id.*) Defendants contend the undisputed medical evidence shows they did not act with a culpable state of mind. (*Id.*) Dr. Marcelo's decision to discontinue Plaintiff's wheelchair is consistent with the CCHCS's Durable Medical Equipment Formulary standards. (*Id.*) Moreover, neither the California Code of Regulations nor the California Penal Code, cited by Plaintiff, "provide any standard for medical professionals within the correctional system, to provide durable medical equipment. Plaintiff does not proffer any evidence to raise a factual dispute of a competing standard for the issuance of durable medical equipment." (*Id.*) Defendants aver Plaintiff's evidence "simply exhibits a difference of opinion and/or disagreement with Drs. Marcelo and Ndu, which, without more, cannot prove a claim for deliberate indifference to medical needs." (*Id.*)

Next, Defendants contend Plaintiff fails to create disputes of fact by labelling certain facts "disputed" without citing relevant evidence. (Doc. 79 at 2.) Defendants UDF Nos. 1 through 16

30

are disputed by Plaintiff "only to the extent that Plaintiff does not agree with the contents of the medical records, and/or the conclusions arrived by Drs. Marcelo and Ndu contained therein," but that does not amount to deliberate indifference. (*Id*.) Defendants further contend that Plaintiff fails to address or dispute UDF Nos. 17 and 18, and that, as to UDF Nos. 19 and 20, Plaintiff does not proffer any medical evidence to create a genuine dispute as to Dr. Feinberg's opinion that Defendants were not deliberately indifferent. (*Id*. at 3.)

Defendants argue Plaintiff's disputed facts are not supported by evidence raising a factual dispute that Defendants knew of and disregarded an excessive risk to Plaintiff when his wheelchair was discontinued and not reinstated. (Doc. 79 at 3.) This is so, they argue, because his supporting evidence includes "medical classifications and evaluations of other CDCR medical providers, which amounts to nothing more than a difference of opinion, and does not create a factual dispute, amounting to deliberate indifference." (*Id*.)

Defendants contend Plaintiff's evidence does not show Dr. Marcelo acted with conscious disregard or that he disregarded an excessive risk to Plaintiff in discontinuing Plaintiff's wheelchair. (Doc. 79 at 4-5.) Plaintiff did not satisfy the first criteria for establishing medical necessity for a wheelchair and Plaintiff failed to dispute Defendants' UDF Nos. 17 and 18 speaking to the criteria. (*Id*.) Therefore, Defendants argue, "Dr. Marcelo was medically justified in discontinuing" the wheelchair and related durable medical equipment. (*Id*.) Defendants note Dr. Marcelo advised Plaintiff he would keep his cane and lower bunk/lower tier housing, advised Plaintiff to perform an exercise program, to continue medications as needed for pain, and encouraged walking and use of the cane. (*Id*.)

Defendants contend it is undisputed that during the course of Plaintiff's examination by Dr. Ndu, Plaintiff "was able to ambulate with a cane, and reported no problems with this activities of daily living." (Doc. 79 at 5.) Dr. Ndu's decision not to reinstate Plaintiffs' wheelchair was also consistent with the CCHCS Durable Medical Equipment and Medical Supply Formulary. (*Id*.) Dr. Ndu continued to provide Plaintiff care and referred Plaintiff for orthotics for orthopedic shoes, placed a request for an ankle brace, prescribed pain medications, encouraged physical therapy and offered Plaintiff a walker. (*Id*.) Plaintiff's evidence does not raise a factual dispute that Dr. Ndu

1    disregarded an excessive risk to Plaintiff's health in reinstating his wheelchair. (*Id.* at 6.)

2            B.  **Analysis**[6]

3            Initially, the Court notes there is no dispute as to whether Plaintiff has a serious medical

4    need, the first prong of the deliberate indifference test. Defendants admitted as much for the

5    purposes of this motion. (*See* Doc. 65 at 14-15.) Hence, the dispute involves the second prong or

6    subjective component of the deliberate indifferent test. That is, whether Defendants Marcelo and

7    Ndu knew that Plaintiff faced a substantial risk of serious harm from the lack of a wheelchair and

8    related durable medical equipment and disregarded that risk by failing to take reasonable

9    measures to abate it. *Farmer*, 511 U.S. at 847. Plaintiff must show Defendants purposefully acted

10   or failed to respond to his pain or possible medical need, causing harm by their indifference.

11   *Wilhelm*, 680 F.3d at 1122. Plaintiff "must show that the course of treatment the doctors chose

12   was medically unacceptable under the circumstances and that the defendants chose this course in

13   conscious disregard of an excessive risk to [his] health." *Snow v. McDaniel*, 681 F.3d 978, 988

14   (9th Cir. 2012) (internal citation & quotation marks omitted), overruled in part on other grounds

15   in *Peralta*, 744 F.3d at 1076.

16                **1.  Treatment Provided by Defendant Marcelo**

17           Dr. Marcelo saw Plaintiff once on July 16, 2018 "for Primary Care Telemedicine follow

18   up at SATF with assistance by LVN Rodriguez." (Doc. 65-1 at 36.) The accompanying Progress

19   Note records Plaintiff's chief complaint as "CCP." (*Id.*) The physical examination results

20   included no tenderness in Plaintiff's back and "[n]ormal range of motion and strength, no

21   tenderness or swelling" in his extremities. (*Id.*) Dr. Marcelo's assessment states: "Simple Right

22   renal cyst. He is asymptomatic. CT abdomen and US kidney showed simple right renal cyst. No

23   treatment required at this time. Will continue to monitor patient. CCP appointment is pending."

24   (*Id.*) Further, a history of hip pain was noted with "[S]tatus post x-ray shows mild hip

25   osteoarthritis complaining of on and off pain, pt stating that pain is excruciating, all day everyday,

26   _____

27   [6] In arriving at these findings and recommendations, the Court carefully reviewed and considered all
     arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses
     thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument,
28   document, paper, or objection is not to be construed to the effect that this Court did not consider the
     argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it
     deemed material and appropriate.

everything makes is worse, nothing makes it better, unknown triggers, pt however able to perform ADL [activities of daily living] without problems, declines to get up from WC [wheelchair], over exaggerates pain with any minimal movement, but when distracted pt is able has FROM [full range of motion] of all extremities and spine." (*Id.* at 37.) When Dr. Marcelo asked Plaintiff why he had a wheelchair, Plaintiff "stated that he was given a WC because of his left foot…denies swelling of left ankle/foot, pt states he cannot move his foot or walk because of ankle pain, however denied any problems with ADLs." (*Id.*) The doctor noted Plaintiff was "very angry and argumentative." (*Id.*) Dr. Marcelo advised Plaintiff he "did not see a medical indication for a WC and that it will be d/c today," and encouraged walking with the use of a cane as beneficial to Plaintiff. (*Id.*) The doctor reported Plaintiff "became threatening stating that he is going to add [Dr. Marcelo's] name [to] his federal law suit." (*Id.*) As concerns Plaintiff's gait and extremities, Dr. Marcelo noted "no visual abnormalities of bilateral knees, no edema, left foot with old healed surgical scar, no swelling or redness, able to passively dorsi flex and plantar flex, pt c/o severe subjective pain with light touch of old healed car, pt able to propel himself out of the exam room." (*Id.*) Dr. Marcelo's assessment concerning the chronic pain in Plaintiff's left foot included "no red flags" following examination. (*Id.*) The "visit was terminated due to pt's behavior." (*Id.*)

### 2. Defendant Marcelo Was Not Deliberately Indifferent

Defendants have met their initial burden of proving an absence of material fact concerning Plaintiff's claim that Defendant Marcelo was deliberately indifferent to his serious medical needs. (*See* UDF Nos. 2, 3, 9, 9, 10, 17-20.) *Oracle Corp.*, 627 F.3d at 387. Thus, the burden shifts to Plaintiff to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

Plaintiff fails to show Dr. Marcelo's course of treatment, in particular his decision to discontinue Plaintiff's use of a wheelchair, was medically unacceptable under the circumstances or that Marcelo chose that treatment course in conscious disregard of an excessive risk to Plaintiff's health. Plaintiff is not medically trained. *See* Fed. R. Evid. 701, 702. He simply offers his opinion that he was entitled to a wheelchair when he was seen by Defendant Marcelo. However, a patient's difference of medical opinion concerning the appropriate course of

1    treatment is not sufficient to constitute deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242

2    (9th Cir. 1989). In addition, a difference of medical opinion among doctors about how to treat a

3    patient is also insufficient to establish deliberate indifference, so long as the chosen treatment was

4    not medically unacceptable. *Toguchi*, 391 F.3d at 1058.

5           Plaintiff has offered no evidence to establish the CCHCS Durable Medical Equipment and

6    Medical Supply Formulary is medically unacceptable. Under that formulary, an individual is

7    entitled to a wheelchair where (1) mobility limitation significantly impairs his ability to

8    participate in one to two mobility related activities of daily living (MRADL) such as toileting,

9    feeding, dressing, grooming and bathing, (2) has other conditions that limits his ability to

10   participate in MRADLs such as significant impairment in cognition, judgment, or vision, (3) has

11   the capability and willingness to safely operate the wheelchair, (4) has sufficient upper extremity

12   function to propel a manual wheelchair, (5) has a disease process or injury for which weight

13   bearing and/or ambulation is contraindicated, (6) has a disease process or injury that precludes the

14   use of the lower extremities (i.e., neuromuscular disease). UDF No. 18. Plaintiff fails to establish

15   any evidence that he was unable "to participate in one or two mobility related activities of daily

16   living … such as toileting, feeding, dressing, grooming or bathing," or that he "has other

17   conditions that limits his ability to participate in MDALs such as significant impairment in

18   cognition, judgment, or vision." *Snow*, 681 F.3d at 988. The medical record includes numerous

19   references to Plaintiff's continued ability to perform the activities of daily living, until October

20   2019 when Plaintiff was issued a wheelchair because he had worsening pain and difficulty getting

21   to the dining hall and yard programs. Plaintiff has not provided an affidavit or other statement

22   from a physician stating that the treatment provided by Dr. Marcelo was medically unacceptable.

23   And differing opinions of other physicians, before or after Dr. Marcelo's treatment of Plaintiff, do

24   not establish medical unacceptability of Dr. Marcelo's course of treatment. *Snow*, at 988

25          As for Plaintiff's argument that Dr. Marcelo did not physically examine him in July 2018

26   and did not use a Bluetooth stethoscope or direct the nurse to palpate his person, that dispute is

27   not material to the ultimate issue of deliberate indifference. An inadequate examination

28   supporting Marcelo's decision to discontinue Plaintiff's use of a wheelchair establishes no more

34

than negligence or medical malpractice where Marcelo's decision was based upon the CCHCS

Durable Medical Equipment and Medical Supply Formulary requirements. Meaning, even

assuming the telemedicine examination was inadequate, Plaintiff's proffered evidence in that

regard cannot defeat summary judgment. *Estelle*, 429 U.S. at 105-06.

Neither the Declaration of Walter McCuff (*see* Doc. 74 at 145-147) nor the Declaration of

Terry L. McGee (*see* Doc. 74 at 149-151), submitted in support of Plaintiff's opposition to the

motion for summary judgment, change this analysis. While both inmate declarants assert personal

knowledge of Plaintiff's difficulty ambulating with a cane, neither serves as evidence that the

chosen treatment by Defendants Marcelo and Ndu was medically unacceptable. Nor do these

declarations establish that Defendant Marcelo's purpose in discontinuing Plaintiff's use of a

wheelchair was to deprive Plaintiff of the wheelchair as neither has personal knowledge in that

regard. Thus, to the extent the declarations are offered to establish Marcelo's purpose was to

deprive Plaintiff of his wheelchair, they amount to nothing more than speculation. *See Shakur v.

Schriro*, 514 F.3d 878, 890 (9th Cir. 2008) (conclusory affidavits that do not affirmatively show

personal knowledge are insufficient).

Plaintiff's various assertions that the Declaration of Bennett Feinberg, M.D. should not be

accepted by the Court are not well taken. For example, Plaintiff complains Dr. Feinberg was not

present during the examinations at issue. Dr. Feinberg's declaration makes plain that he was

asked to review Plaintiff's medical records and to provide his expert opinion—the fact of his not

present during any examination at issue does not preclude the doctor's opinion or this Court's

consideration of the declaration. *See Rios v. Gipson*, No. 1:12-cv-01334-LJO SKO (PC), 2019

WL 1004574, at *5 (E.D. Cal. Feb. 28, 2019) ("Plaintiff argues that Dr. Feinberg has no personal

knowledge of Plaintiff, was not involved in Plaintiff's care and treatment, and that his opinions

are deficient since formed without interviewing or examining Plaintiff. However, an expert's

opinion need not be based on the expert's personal knowledge of the facts. [Citations.]

Accordingly, Dr. Feinberg's opinion is properly considered in support of Defendants' motion for

summary judgment"). In another example, Plaintiff complains Dr. Feinberg did not refer to every

medical encounter during the relevant time period. However, Dr. Feinberg's declaration explains

he focused on those relevant to the time period *and* those that recorded information based upon personal knowledge. In any event, the Court's consideration of the opinion is appropriate. *See Rios v. Gipson*, No. 1:12-cv-01334-LJO SKO (PC), 2018 WL 2155531, at *2 (E.D. Cal. May 10, 2018) ("it is appropriate for the Court to consider the opinions of Dr. Feinberg in evaluating Defendants' motion for summary judgment, provided he has supported his conclusions. It matters not whether Dr. Feinberg has interviewed or examined Plaintiff"). And, Plaintiff has failed to present competent evidence to contract Dr. Feinberg's opinion, other than his own lay opinion.

Accordingly, there is no genuine issue of material fact necessitating a trial on Dr. Marcelo's decision to discontinue Plaintiff's use of a wheelchair. For these reasons, Dr. Marcelo is entitled to summary judgment.

### 3.   Treatment Provided by Dr. Ndu

The Progress Note of November 19, 2018, indicates Plaintiff was seen for an evaluation of orthopedic shoes following initial denial and a request for physical findings. (Doc. 65-1 at 28.) Plaintiff reported a history of "GSW [gunshot wound] to left ankle" and requested replacement orthopedic shoes last issued in 2015. (*Id.*) He complained of left ankle aggravated by walking, use of a cane, the denial of "recent falls or problems managing his ADLS." (*Id.*) Plaintiff reported "his chronic medical issues are stable" and "did not complain of back pain." (*Id.*) Physical examination revealed "left ankle joint is tender to palpitation with reduced ROM [range of motion]" and the doctor's treatment plan included a referral to "orthotics for orthopedic shoes," continued medication and "[f]ollow up chronic are clinic." (*Id.* at 29.)

In a Progress Note dated January 16, 2019, Plaintiff's chief complaint was the denial of an "Ortho referral." (Doc. 65-1 at 26.) He complained of left ankle pain and ambulated with a cane "and reports no problems with his ADLs." (*Id.*) It was noted Plaintiff's "ankle is chronically swollen with reduced range of motion, slight deformity." (*Id.*) He was referred for replacement orthopedic shoes. (*Id.*)

In a Progress Note dated March 19, 2019, Plaintiff was seen for a routine follow up. (Doc. 65-1 at 23.) On this occasion, plaintiff complained of varicose veins and right knee pain. (*Id.*) A physical examination confirmed the presence of varicose veins, and a referral was made for

1    further treatment. (*Id*. at 23.)

2            The Progress Note of April 18, 2019, indicates Plaintiff complained of "multiple medical

3    issues including chronic back and left ankle pain, scheduled for chronic care visit, review of back

4    x-ray and evaluate for low bunk/lower tier." (Doc. 65-1 at 21.) The x-ray of Plaintiff's back

5    remained unchanged from a prior study. (*Id*.) The note indicates Plaintiff requested a wheelchair

6    because "custody staff asked him to request a wheelchair because it will facilitate his transfer …

7    so he could be near his family" and further indicates Plaintiff stated "he does not need a

8    wheelchair because he can walk," that he walks daily and "can do several laps at a time." (*Id*.)

9    Previously ordered orthotics, a vascular surgery evaluation and constipation were also discussed.

10   (*Id*.) Dr. Ndu's physical examination results include Plaintiff being "in no apparent distress,"

11   "very dramatic" with tendency to "exaggerate his pain," where his lumbar spine was not tender,

12   and his left ankle was tender to palpitation. (*Id*. at 22.) Dr. Ndu's assessment notes "mild to

13   moderate and lower lumbar spine degenerative changes are stable" and "swelling [] most likely a

14   lipoma" to be monitored. (*Id*.) Noting Plaintiff is to receive "new orthopedic shoes and AFO

15   brace" at his next appointment, when Dr. Ndu offered Plaintiff a walker, citing Plaintiff's

16   reported ability to "walk several laps at one time," Plaintiff refused the walker and elected to

17   continue using his cane. (*Id*.) She found no medical indication for a wheelchair. (*Id*.)

18           The Progress Note of August 27, 2019, indicates Plaintiff complained of "worsening back

19   and bilateral hip pain" and "difficulty walking with a cane. He requested a wheelchair." (Doc. 65-

20   1 at 17.) Dr. Ndu noted Plaintiff "climbed unto [*sic*] the examination table without assistance."

21   (*Id*. at 18.) Her physical examination revealed tenderness in the lumbar spine with palpitation and

22   increased pain sensitivity, but the straight leg raise was negative bilaterally and Plaintiff's range

23   of motion was not assessed. (*Id*.) Plaintiff's gait was steady with the use of a cane. (*Id*.) Dr. Ndu

24   noted Plaintiff's lack of use of pain medication for months and that an x-ray of Plaintiff's "lumbar

25   spine showed mild to moderate mid and lower lumbar spine degenerative changes that are stable"

26   and mild osteoarthritis in Plaintiff's left hip. (*Id*.) She also noted Plaintiff's lack of desire to

27   participate in physical therapy following a referral. (*Id*.) For these reasons, Dr. Ndu found "no

28   indication for a wheelchair" and advised Plaintiff "to continue current pain medications." (*Id*.)

The Progress Note of October 10, 2019, indicates Plaintiff complained of "worsening left ankle pain" and requested a wheelchair; he was using "a cane and ankle brace but states he has difficulty getting to yard programs and dinning [*sic*] hall." (Doc. 65-1 at 15.) Dr. Ndu's physical examination revealed tenderness in Plaintiff's left ankle and "reduced ROM." (*Id*. at 16.) Dr. Ndu ordered Plaintiff be issued a wheelchair. (*Id*.)

### 4. Defendant Ndu Was Not Deliberately Indifferent

Defendants have met their initial burden of proving an absence of material fact concerning Plaintiff's claim that Defendant Ndu was deliberately indifferent to his serious medical needs. (*See* UDF Nos. 8-12, 15-20.) *Oracle Corp.*, 627 F.3d at 387. Therefore, the burden shifts to Plaintiff to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

Plaintiff fails to show Dr. Ndu's course of treatment, including any decision not to issue a wheelchair prior to October 10, 2019, was medically unacceptable under the circumstances or that Ndu chose that course of treatment in conscious disregard of an excessive risk to Plaintiff's health. Again, Plaintiff is not medically trained. *See* Fed. R. Evid. 701, 702. Therefore, his opinion that he was entitled to a wheelchair is insufficient to constitute deliberate indifference. *Sanchez*, 891 F.2d at 242. And, as previously noted, a difference of medical opinion among doctors about how to treat a patient is also insufficient to establish deliberate indifference, so long as the chosen treatment was not medically unacceptable. *Toguchi*, 391 F.3d at 1058. Plaintiff has not provided an affidavit or other statement from a physician stating that the treatment provided by Dr. Ndu was medically unacceptable. *Snow*, 681 F.3d at 988.

As above, Plaintiff has offered no evidence to establish the CCHCS Durable Medical Equipment and Medical Supply Formulary is medically unacceptable. *See* UDF No. 18. Plaintiff fails to establish any evidence that he was unable "to participate in one or two mobility related activities of daily living … such as toileting, feeding, dressing, grooming or bathing" or that he "has other conditions that limits his ability to participate in MDALs such as significant impairment in cognition, judgment, or vision." *Snow*, 681 F.3d at 988. The medical record includes numerous references to Plaintiff's continued ability to perform the activities of daily

1  living, until October 10, 2019, when Plaintiff was issued a wheelchair by Ndu because he

2  reported worsening pain and difficulty getting to the dining hall and yard programs, meeting the

3  necessity requirements of the Formulary.

4     Plaintiff fails to allege facts showing Defendant Ndu's conclusions were medically

5  unacceptable under the circumstances. Plaintiff's belief that he should have been given a

6  wheelchair earlier does not suffice to create a triable issue of fact regarding whether Defendant

7  Ndu's failure to order a wheelchair earlier rose to the level of deliberate indifference. *See Jett*,

8  439 F.3d at 1096. Plaintiff has failed to demonstrate anything beyond his mere disagreement with

9  the treatment provided. *Sanchez*, 891 F.2d at 242; *Toguchi*, 391 F.3d at 1058.

10    Nor do Plaintiff's assertions that Ndu's records include inaccuracies or assertions Plaintiff

11 never made create triable issues of material fact. Even accepting Plaintiff's allegations that Dr.

12 Ndu did not record his complaints accurately, Defendant is entitled to summary judgment because

13 Plaintiff has failed to demonstrate her course of treatment for Plaintiff was medically

14 inappropriate. *Snow*, 681 F.3d at 988.

15    As above, neither of the inmate declarations submitted in support of Plaintiff's opposition

16 to the motion for summary judgment change the analysis. While both inmate declarants assert

17 personal knowledge of Plaintiff's difficulty ambulating with a cane, neither serves as evidence

18 that the chosen treatment by Defendant Ndu was medically unacceptable. Nor do these

19 declarations establish that Defendant Ndu's purpose during her course of treatment before issuing

20 Plaintiff a wheelchair in October 2019 was in conscious disregard of a risk to Plaintiff as neither

21 has personal knowledge in that regard. *Shakur*, 514 F.3d at 890.

22    Further, for the same reasons discussed above, the Court discounts Plaintiff's objections

23 regarding Dr. Feinberg's declaration. Dr. Feinberg's opinions properly are considered by this

24 Court to the extent they are adequately supported. *Rios*, 2019 WL 1004574, at *5.

25    Accordingly, there is no genuine issue of material fact necessitating a trial on Dr. Ndu's

26 course of treatment of Plaintiff, including any decision not to order a wheelchair for Plaintiff

27 before October 10, 2019. For these reasons, Dr. Ndu is entitled to summary judgment.

28    In sum, Plaintiff has failed to demonstrate a genuine issue of material fact. *Matsushita*,

39

1 | 475 U.S. at 587.

2 | **VIII.   CONCLUSION AND RECOMMENDATION**

3 | For the reasons stated above, this Court **RECOMMENDS** Defendants' motion for

4 | summary judgment (Doc. 65) be **GRANTED**.

5 | These Findings and Recommendations will be submitted to the district judge assigned to

6 | this case, pursuant to 28 U.S.C. § 636(b)(l). **<u>Within 14 days</u>** of the date of service of these

7 | Findings and Recommendations, a party may file written objections with the Court. The

8 | document should be captioned, "Objections to Magistrate Judge's Findings and

9 | Recommendations." Failure to file objections within the specified time may result in waiver of

10 | rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v.*

11 | *Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

12 | IT IS SO ORDERED.

13 | Dated:   **July 24, 2023**

14 | UNITED STATES MAGISTRATE JUDGE

40